IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LOUISE ARCHULETA,

       Plaintiff,

v.                                                                      15cv1099 WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

Louise Archuleta applied for disability insurance benefits on May 10, 2012, alleging disability beginning on March 28, 2012, from bone spur surgery, no foot padding, and severe foot pains. (Administrative Record "AR" 74, 144, 156.) After her application was denied at all administrative levels, she brought this proceeding for judicial review. The case is before me now on her Motion to Reverse or Remand and supporting brief, a response filed by the Commissioner of the Social Security Administration ("SSA"), and Archuleta's reply. (Docs. 16, 17, 20, 22.) For the reasons explained below, I deny Archuleta's motion to remand and affirm the judgment of the SSA.

**STANDARD OF REVIEW**

In reviewing the Administrative Law Judge's ("ALJ") decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. I may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that she has done so . . . ." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. § 404.1520(a)(4) (2016). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. § 404.1520(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 404.1520(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to see if the claimant is still capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 404.1520(f). If a claimant is

not prevented from performing her past work, then she is not disabled. 20 C.F.R. § 404.1520(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to her past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

**FACTUAL BACKGROUND**

Archuleta is fifty years old. (AR 144.) She graduated high school and previously worked as a cashier at a convenience store and manager at a Family Dollar store. (AR 74, 147, 312.)

I do not address everything in the record but rather target my factual discussion to those facts necessary to the disposition of this case.

Archuleta saw Harold McFarling, D.O., fourteen times in 2011 and 2012 for various types of foot pain. (*See* AR 230-243.) Dr. McFarling noted that Archuleta complained of foot "pain for years," which was "always a burning type pain – no weakness – no tingling or numbness." (AR 240.) Dr. McFarling continually noted peripheral neuropathy (*see, e.g.*, AR 238, 239, 240) and sent Archuleta to Samuel Carpenter, D.P.M., for a pre-operative evaluation for heel spur surgery (*see* AR 230, 231) and both Jonathon Jones, M.D., and Victor Worth, M.D., for pain management (*see* AR 264, 312).

Archuleta saw Dr. Carpenter for four pre-operative visits in early 2012 (AR 261-65), underwent heel spur and plantar fascial release surgery on March 30, 2012 (AR 245-256), and saw Dr. Carpenter for three post-operative visits in the weeks following the surgery (AR 258-

260). During the final post-operative visit, on April 30, 2012, Dr. Carpenter noted that Archuleta had "no significant pain in her left heel unless she stands for more than an hour," "complains of ongoing pain in the balls and lateral aspects of both feet," and diagnosed Archuleta with "chronic bursitis." (AR 258.)

Archuleta saw Dr. Jones with Four Corners Spine and Pain for bilateral foot pain five times between 2012 and 2014. (*See* AR 297-316.) During the first visit, on January 25, 2012, Dr. Jones diagnosed Archuleta with peripheral neuropathy and noted she had normal gait and leg strength. (*See* AR 312-15.) During a visit the next year, on October 10, 2013, Dr. Jones noted that Archuleta had a "mildly antalgic" gait and full leg strength. (AR 308.) And at the final visit the following year, on January 9, 2014, Dr. Jones noted "normal" gait and full leg strength. (AR 298.)

State agency physician David Neale, M.D., reviewed Archuleta's records on July 10, 2012. (*See* AR 286-293.) Dr. Neale noted that the "[Electromyogram and Nerve Conduction] study on 10/11/11 confirmed Peripheral Neuropathy of Sensory & Motor [Nerves] in bilat[eral] [lower extremities]." (AR 293; *see also* AR 23 (interpreting most of Dr. Neale's abbreviations).) Dr. Neale later concluded that the "[medical evidence of record] supports an RFC of Sedentary." (AR 293.) State agency physician Judith Forte, M.D., reviewed Archuleta's records on February 1, 2013 (*see* AR 294-296) and concurred with Dr. Neale's RFC finding (AR 296).

Archuleta saw Dr. Worth at Farmington Family Practice three times in 2013. (*See* AR 327-334.) The first visit was for a "health maintenance exam" on August 29. (AR 328, 330.) Dr. Worth noted that Archuleta had "chronic foot pain" and "sent her to Dr. Ward" for "a second opinion since [her chronic foot pain] appears to be the principal factor limiting her ability to work." (AR 330.) At the second visit, on September 9 (*see* AR 327, 329), Dr. Worth noted that

4

Archuleta's foot pain was "apparently due to neuropathy based on Dr. Jones['s] recent note." (AR 329.)

Archuleta attended her referral appointment with Lawrence O. Ward, D.P.M., at Orthopedic Associates, on September 16, 2013. (AR 320-321.) Dr. Ward sent Archuleta for an MRI and noted that "[t]he patient will return to the clinic after the MRI to review findings." (AR 321.) At the second visit, on September 24, 2013, Dr. Ward noted that "both MRIs show evidence of plantar fasciitis with tears. There is Baxter's neuritis." (AR 319.) Dr. Ward stated that surgery was appropriate but Archuleta "would like to delay surgery for now because of financial issues" and, in the interim, "will continue with stretching exercises and appropriate shoes." (*Id.*)

## ALJ and Appeals Council's Decision

The ALJ issued her decision on May 8, 2014. (AR 26.) At step one, she determined that Archuleta had not engaged in substantial gainful activity since March 28, 2012. (AR 19.) At step two, she found that Archuleta had the severe impairments of "plantar fasciitis; tendonitis; degenerative disc disease; polyneuropathy; and obesity." (*Id.*) At step three, the ALJ concluded that Archuleta did not have an impairment or combination of impairments that met or medically equaled anything in the Listing of Impairments. (AR 20.)

At phase one of step four, the ALJ determined that Archuleta had the RFC "to perform the full range of sedentary work." (*Id.*) In making this determination, the ALJ found Archuleta "not entirely credible" (AR 21) but did not explicitly state the weight she afforded the medical opinions she discussed in the RFC section (*see* AR 21-24). Instead, the ALJ's discussion of weight is limited to the following somewhat ambiguous sentence: "although there is additional evidence received after the medical consultants' conclusion, the preponderance of the evidence

continues to support these opinions and as such the undersigned gives these opinions great weight." (AR 24.) The phrase "preponderance of the evidence" appears to refer to the medical opinions the ALJ cited in her decision—Drs. McFarling, Carpenter, Worth, and Ward. The phrase "these opinions," in turn, appears to refer to the opinions from the medical consultants cited in the ALJ's decision—Drs. Neale and Forte.

At phases two and three of step four, the ALJ relied on testimony from vocational expert Thomas J. Meunier, Jr., to conclude that Archuleta "has acquired work skills from past relevant work" "as a retail store manager" but "is unable to perform any past relevant work." (AR 25.)

Proceeding to step five, the ALJ heard testimony from Meunier and cited Medical-Vocational Rule ("Grid") 201.22 to find that Archuleta could perform other jobs existing in significant numbers in the national economy and was not disabled. (AR 25-26.) The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (AR 1.)

## DISCUSSION

Archuleta cites two reasons to support reversing and remanding her case. First, the ALJ failed to provide "a full explanation" at step three of why Archuleta did not meet the listed impairment for peripheral neuropathies. (*See* Doc. 17 at 3-8.) And second, the Commissioner failed to carry her burden at step five because the vocational expert's testimony "did not come close to comporting with due process," and relying on the testimony violated Archuleta's due process guarantee of a fair hearing. (*Id.* at 9; *see also* Doc. 22 at 8-10.)

### I.     Step Three Finding

Preliminarily, I note that Listing 11.14 for peripheral neuropathies was recently amended, and neither party indicated which prior version they quote in their briefs. (*Compare* 20 C.F.R. Pt.

404, Subpt. P, App'x 1 (effective Sept. 29, 2016) *with* Doc. 17 at 3; Doc. 20 at 7.) The version in effect between June 7, 2011, and June 12, 2012, seems most appropriate. It contains the exact language the parties quote in their briefs and includes the date Archuleta claims her disability began—March 28, 2012—and the date she filed her application for benefits—May 10, 2012. I cite this prior version below.

Listing 11.14 for peripheral neuropathies requires "disorganization of motor function as described in 11.04B, in spite of prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Listing 11.14). Listing 11.04B, in turn, requires "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)." *Id.* (Listing 11.04). Listing 11.00C further explains this requirement as "[p]ersistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances . . . ." *Id.* (Listing 11.00C).

The parties cite different Tenth Circuit cases to support their arguments about step three error. Archuleta's opening brief relies on *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996), where the court found error because the ALJ's step three finding of no disability amounted to a "bare conclusion" without "discuss[ion of] the evidence or his reasons . . . or even identif[ication of] the relevant Listing or Listings."

In her response, the Commissioner cites two cases where the Tenth Circuit found step three errors harmless. In *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734-35 (10th Cir. 2005), the court clarified that *Clifton* does not necessarily require remand for an insufficient step three finding because the harmless error standard applies when the step four and five findings that are "confirmed or unchallenged . . . confirm the step three determination" and "conclusively

7

preclude [a c]laimant's qualification under the listings at step three." In the second case, *Duncan v. Colvin*, 608 F. App'x 566, 576 (10th Cir. 2015) (unpublished), the court found that, even if the ALJ provided insufficient step three analysis, "the error was harmless" when the "RFC finding negates the possibility of any finding that [the claimant] is conclusively disabled and step three," and the claimant failed to "satisf[y] all of the Listing's criteria."

In her reply, Archuleta cites two cases where the Tenth Circuit found that the harmless error standard did not apply because the ALJ failed to address significant contradictory medical evidence in the record: *Henderson v. Astrue*, 383 F. App'x 700, 702 (10th Cir. 2010) (unpublished) and *Dye v. Barnhart*, 180 F. App'x 27, 31 (10th Cir. 2006) (unpublished).

The questions, then, are whether the ALJ's step three finding amounted to a bare conclusion, and if so, whether the error was harmless.

A review of the ALJ's step three finding reveals that it amounts to a bare conclusion, similar to *Clifton*. Although the ALJ stated that she considered three sections from the Listing of Impairments—which differs from *Clifton* because the ALJ there did not mention any specific listings—the ALJ provides no accompanying analysis. Instead, the ALJ states, in a non-specific sentence, that "the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment." (AR 20.) The ALJ's failure to "discuss the evidence or h[er] reasons for determining that [the claimant] was not disabled at step three" is reversible error under *Clifton*. 79 F.3d at 1009.

But I agree with the Commissioner that the harmless error standard, as discussed in *Fischer-Ross* and *Duncan*, applies to nullify the ALJ's bare conclusion at step three because the ALJ's findings at step four and five conclusively rule out disability at step three, and Archuleta

does not meet all of the criteria of Listing 11.14. Granted, medical reports in the record contain diagnosis and discussion of "peripheral neuropathy," but neither the record nor Archuleta's briefing contain discussion of "[p]ersistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances . . . .," which is required by the Listing.

Archuleta's opening brief contains an example of medical providers using the term "peripheral neuropathy," but the accompanying findings fail to meet the requirements of the listing. Archuleta argues that she "suffers from polyneuropathy of the lower extremities bilaterally. Her condition has been diagnosed by numerous doctors including Harold K. McFarling, D.O., and Jonathan Jones, M.D." (Doc. 17 at 4.) Yet a review of their medical reports reveals that these diagnoses fail to meet the strictures of the Listing. Dr. McFarling noted that Archuleta stated her pain was "always a burning type pain – no weakness – no tingling or numbness." (AR 240.) And Dr. Jones, who only diagnosed peripheral neuropathy in the first of five visits (*compare* AR 315 *with* AR 299, 303, 305, 309), still indicated "no" for "Balance Problems," "no" for "Fainting," and wrote "Gait: Normal" (AR 313-314). These reports do not suggest motor function issues.

The cases Archuleta cites in her reply to dispute the applicability of the harmless error standard—*Henderson* and *Dye*—are inapplicable because they involved contrary medical evidence that undermined the ALJ's RFC, which is not the circumstance here. In *Henderson*, the court noted that harmless error did not apply because there was "certainly sufficient evidence in the record" to question whether the claimant met the listing for disorders of the spine. 383 F. App'x at 702. Likewise, in *Dye*, the court noted that harmless error did not apply because the

9

ALJ failed to discredit or provide contrary evidence to address the "highly probative" result of an exercise test that fulfilled the listing criteria for ischemic heart disease. *See* 180 F. App'x at 30.

Here, Archuleta points to no probative evidence in the record that contradicts the ALJ's RFC finding, so relying on cases where unexplained probative evidence mandated remand is misplaced. The ALJ's "bare conclusion" at step three was error, but the error was harmless because the step four and five findings were supported, and Archuleta failed to cite medical evidence that meets Listing 11.14.

## II. Step Five Finding

Archuleta argues that "[t]he substance of Mr. Meunier's testimony did not come close to comporting with due process" because it was "inherently flawed" and "failed to support a denial at step five." (Doc. 17 at 9.) The Commissioner responds that Meunier's testimony was "irrelevant" to the step five finding because, under the circumstances, the ALJ properly relied on the Grids to find Archuleta not disabled. (Doc. 20 at 12.)

The question, then, is whether potentially flawed analysis by a vocational expert creates error at step five when the ALJ's RFC is supported by substantial evidence and her subsequent application of the Grids is correct. I find that it does not create error.

The Commissioner cites *Gossett v. Bowen*, 862 F.2d 802 (10th Cir. 1988), to argue that vocational expert testimony was unnecessary here. In *Gossett*, the Tenth Circuit noted that "[t]he grids obviate the need for [vocational expert] testimony" but clarified that "[a]utomatic application of the grids is appropriate only when a claimant's RFC, age, work experience, and education precisely match a grid category." *Id.* at 806 (citing *Heckler v. Campbell*, 461 U.S. 461-462 n. 5 (1983)).

A very recent Tenth Circuit decision, *Aslan v. Colvin*, 637 F. App'x 509 (10th Cir. 2016) (unpublished), also addressed an alleged error at step five. In *Aslan*, the ALJ did not consult a vocational expert to find the claimant not disabled, and the claimant claimed it was error. *Id.* at 509. The court noted that "an ALJ may rely exclusively on the grids if the claimant 'possesses the physical capacities equal to the strength requirements for most of the jobs' within a range of work, *e.g.*, sedentary work," and held "that the ALJ did not err in relying on the grids at step five to find that [the claimant] was not disabled." *Id.* at 510 (quoting *Channel v. Heckler*, 747 F.2d 577, 580 (10th Cir. 1984) (per curiam) (internal alteration and emphasis omitted).

Here, the ALJ stated that "a finding of 'not disabled' is reached by direct application of [Grid] 201.22" (AR 26), which comports with the requirement in *Gossett* that the grid category precisely match the four listed factors. Further, the ALJ found that Archuleta had "a residual function capacity for the full range of sedentary work" (*id.*), which comports with the requirement in *Aslan* that Archuleta have the strength capacity necessary for most jobs within her work category. Archuleta's reply does not cite a Tenth Circuit case to counter the holdings in *Gossett* and *Aslan* (*see* Doc. 22), and I find that these cases mandate a finding of no error at step five.

## CONCLUSION

The ALJ's error at step three was harmless because substantial evidence supports the RFC finding and Archuleta did not cite medical evidence demonstrating she met the criteria in Listing 11.14. As for the step five finding, possible flaws in the vocational expert's testimony are irrelevant because the ALJ was permitted to apply the grids automatically, given Archuleta's RFC, age, work experience, and education. I deny Archuleta's motion to reverse or remand and affirm the decision of the Commissioner.

IT IS SO ORDERED.

                                                                                     _____
                                                                                     William P. Lynch
                                                                                     United States Magistrate Judge